HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

*IN RE SUBPOENA TO JIMMY NGUYEN*

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman; and W&K Info Defense Research, LLC,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CRAIG WRIGHT,<br><br>　　　　Defendant. | CASE NO. 2:20-cv-00593-BJR<br><br>**DECLARATION OF NON-PARTY JIMMY NGUYEN IN SUPPORT OF RESPONSE TO PLAINTIFF'S SECOND MOTION TO COMPEL** |

DECLARATION OF JIMMY NGUYEN IN RESPONSE
TO PLAINTIFFS' SECOND MOTION TO COMPEL
(USDC CASE NO. 2:20-cv-00593-BJR)
Page 1 of 9

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

# DECLARATION

1. My name is Jimmy Nguyen. I am over the age of 18, and I have personal knowledge of the facts stated in this declaration.

2. I serve as Founding President of the Bitcoin Association, the leading global industry organization for Bitcoin business that supports Bitcoin SV (BSV), one of the competing chains of Bitcoin.

3. Before my role with Bitcoin Association, I worked for nChain Holdings Ltd. in various capacities, ultimately becoming CEO of the nChain Group in December 2017. nChain Holdings Limited and nChain Limited, a United Kingdom company, comprise the nChain Group of companies (collectively, "nChain"). nChain is one of the world's leading blockchain technology companies and a key Bitcoin SV supporter. Dr. Craig S. Wright is nChain Limited's Chief Scientist, working for the company in the United Kingdom.

4. While at nChain, I observed that Dr. Wright is a brilliant scientist but had difficulty communicating his ideas in a way that other people could understand. This problem occurred especially when he discussed Bitcoin and blockchain technology concepts to people who do not understand the subject matter well or who had views based upon misconceptions about Bitcoin. This often led to frustration for Dr. Wright and other employees and persons with whom Dr. Wright interacted.

5. I obtained my undergraduate degree from the University of California, Los Angeles in Communication Studies and have many years of experience in speech/communication competitions and similar activities. While at nChain, I worked with Dr. Wright to help improve his ability to explain Bitcoin and blockchain technology concepts – including in his written work product and in his speaking presentations. I also came to understand Dr. Wright better, how to decipher his written and verbal communications, and

DECLARATION OF JIMMY NGUYEN IN RESPONSE
TO PLAINTIFFS' SECOND MOTION TO COMPEL
(USDC CASE NO. 2:20-cv-00593-BJR)
Page 2 of 9

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

learned over time how best to elicit clarifying information from him when his communications are unclear.

### THE FLORIDA LAWSUIT

6. In February 2018, I learned about the filing of the lawsuit *Ira Kleiman, as the personal representative of the Estate of David Kleiman v. Craig Wright* in the United States District Court for the Southern District of Florida, Case No. 18-CV-80176 (the "Florida Lawsuit"), and reviewed the complaint which was filed on February 14, 2018. From my review of the complaint, I understood that the Florida Lawsuit made allegations about Dr. Wright and David Kleiman's involvement with Bitcoin from its inception and before David Kleiman passed away in April 2013. The Kleiman Estate is claiming that Dr. Wright and David Kleiman mined together a large amount of Bitcoin, and is claiming the Estate is now entitled to a large amount of Bitcoin from Dr. Wright.

7. The Florida Lawsuit also involves a dispute over intellectual property, with the first paragraph of the original complaint stating: "This matter concerns the rightful ownership of hundreds of thousands of bitcoins *and the valuable intellectual property rights of various blockchain technologies.*" (Compl. ¶ 1) (emphasis added). The complaint alleged that Dr. Wright and David Kleiman developed or owned together Bitcoin-related intellectual property, and (paragraph 6) that Dr. Wright "perpetrated a scheme against Dave's estate to seize Dave's bitcoins and his rights to certain intellectual property associated with the Bitcoin technology."

8. I also saw in the complaint specific references to nChain and its patents. Paragraph 117 alleges that "Craig currently serves as Chief Scientist of a UK company called nChain in London, where he has filed hundreds of patents related to Bitcoin and blockchain technology through this entity." Count II for Misappropriation is focused on the intellectual property claims. Paragraph 126 alleged that Dr. Wright misappropriated trade secrets belonging

DECLARATION OF JIMMY NGUYEN IN RESPONSE
TO PLAINTIFFS' SECOND MOTION TO COMPEL
(USDC CASE NO. 2:20-cv-00593-BJR)
Page 3 of 9

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

to the Estate, and that Dr. Wright was using such alleged trade secrets to develop new patents at nChain:

> These trade secrets are generally described as programs, methods, techniques, and processes relating to blockchain based technologies. These trade secrets derived actual and potential independent economic value from not being generally known to the public or to other persons who could obtain economic value from its disclosure or use. *As evidence of the substantial economic value relating to these trade secrets, Craig has used these trade secrets to develop new intellectual property and assets, some of which have resulted in the filing of new patents, through his work at nChain.*

(Compl. ¶ 127) (emphasis added).

9. I saw from the complaint that the Kleiman Estate was claiming among its alleged remedies damages related to and return of the "wrongfully taken bitcoins and IP" (Compl. ¶ 140) and the "value of the wrongfully retained Bitcoin and IP." (Compl. ¶ 148).

10. From reading the complaint, I believed that the Kleiman Estate could at some point attempt to assert claims against nChain and its patent portfolio.

### ROLE AS LEGAL LIASION FOR DR. WRIGHT

11. Shortly after the Florida lawsuit was filed in February 2018, Dr. Wright asked me to help him find litigation counsel. Dr. Wright requested my help because I am a former intellectual property and digital technology lawyer in the United States and had relationships with lawyers who could recommend Florida litigation counsel. I explained to Dr. Wright that it would be difficult to find litigation counsel with experience or knowledge about Bitcoin, so I discussed with him the need to find counsel who could work and communicate well with him. This was important given Dr. Wright's communication difficulties, and the expectation that Dr. Wright would have to explain difficult Bitcoin and blockchain topics to lawyers who would not likely be very knowledgeable about Bitcoin. Dr. Wright acknowledged this need and asked me to help him with the Florida Lawsuit. I explained to Dr. Wright that I was no longer practicing law and could not act as his lawyer in the Florida Lawsuit. He then requested that I serve as his liaison or representative between him and his litigation counsel (once selected) to facilitate

DECLARATION OF JIMMY NGUYEN IN RESPONSE
TO PLAINTIFFS' SECOND MOTION TO COMPEL
(USDC CASE NO. 2:20-cv-00593-BJR)
Page 4 of 9

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

communication, especially with helping him explain Bitcoin and blockchain issues to his counsel and helping his counsel interpret Dr. Wright. He and I discussed that I was the obvious choice to act in this role because I was the rare combination of someone who could understand how Dr. Wright communicates, understood Bitcoin, was a former U.S. lawyer, and had become adept at helping interpret Dr. Wright for other people, especially on Bitcoin topics.

12. I conducted a search for litigation counsel in Florida for Dr. Wright, and in early March 2018, was the primary selector of the law firm representing him in the Florida Lawsuit. Shortly after Dr. Wright's counsel was engaged, I discussed again with Dr. Wright that I would continue to be involved to act as his liaison or representative to facilitate communication with his litigation counsel and to help his litigation counsel interpret Dr. Wright. I therefore acted as a legal liaison between Dr. Wright and his litigation team, participated in developing defense strategies, and communicated the lawyers' mental impressions to Dr. Wright to facilitate a defense to Plaintiffs' claims.

13. While I do not know the specific terms of the arrangement, I know that Calvin Ayre is providing legal funding to Dr. Wright in connection with defense of the Florida Lawsuit. Ron Tarter is a Canadian lawyer who acts as Calvin Ayre's legal advisor, including in connection with the Florida Lawsuit. I engaged in privileged and confidential communications with Mr. Ayre and Mr. Tarter regarding the litigation in connection with Mr. Ayre's role as litigation funder.

14. For the same reasons described above, I have also acted as a liaison or representative between Dr. Wright and his lawyers in other legal matters, unrelated to the Florida Lawsuit.

DECLARATION OF JIMMY NGUYEN IN RESPONSE
TO PLAINTIFFS' SECOND MOTION TO COMPEL
(USDC CASE NO. 2:20-cv-00593-BJR)
Page 5 of 9

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

**2018 COMMON INTEREST AGREEMENT**

15.     During the same time I found litigation counsel for Dr. Wright, I also selected and engaged a law firm to represent nChain Holdings Ltd. and nChain Limited in connection with the subject matter of the Florida Lawsuit. I monitored the litigation on behalf of the nChain entities and engaged in related confidential communications with senior leaders of nChain and with nChain's and Dr. Wright's respective legal counsel.

16.     In April 2018, a Common Interest Agreement was executed between Dr. Wright, nChain Holdings Ltd. and nChain Limited ("2018 Common Interest Agreement"). I signed the Common Interest Agreement on behalf of the nChain entities. The agreement was also signed by Dr. Wright and counsel for Dr. Wright and the nChain entities. The 2018 Common Interest Agreement is made expressly with respect to the Florida Lawsuit and any related litigation. nChain and Dr. Wright (as nChain's Chief Scientist and inventor or co-inventor of most of nChain's patent portfolio) have a common interest in protecting nChain's patent portfolio and other intellectual property. We entered into this Common Interest Agreement because, as described above, the Florida Lawsuit made allegations about and claims that appeared to target the common interest of nChain's intellectual property. The purpose of the agreement was to enable nChain and Dr. Wright (and their lawyers) to confer and share information amongst each other related to the litigation without waiving legal privileges and work product protections.

17.     The 2018 Common Interest Agreement memorialized the unwritten understanding between nChain and Dr. Wright that was in place since the inception of the Florida Lawsuit.

**2020 COMMON INTEREST AGREEMENT**

18.     In late 2018, I transitioned from nChain CEO to become Founding President of the Bitcoin Association. In December 2018, my role with nChain transitioned from CEO to Chair of its Strategic Advisory Board. My activities in this role included interacting with third-

DECLARATION OF JIMMY NGUYEN IN RESPONSE
TO PLAINTIFFS' SECOND MOTION TO COMPEL
(USDC CASE NO. 2:20-cv-00593-BJR)
Page 6 of 9

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

party companies on behalf of nChain related to ongoing business matters in which I had been involved in my former nChain positions; attending meetings with and advising nChain executives; and assisting with nChain's media and public relations activities. I also continued to monitor the Florida litigation on behalf of the nChain entities and engaged in related confidential communications with senior leaders of nChain and with nChain's and Dr. Wright's respective legal counsel.

19. On March 12, 2020, I departed from the Strategic Advisory Board of nChain. After that date, I no longer have any role with nChain.

20. On March 16, 2020, I had a telephone conversation with Dr. Wright. Now that I no longer had a role at nChain, I wanted to confirm with Dr. Wright whether he wanted me to continue to act as his liaison or representative in the Florida Lawsuit (as well as in other matters). Dr. Wright said that he did want me to continue in that role. On March 27, 2020, I sent Dr. Wright an email to confirm that conversation, as well as to confirm that I would continue to act in a similar representative/liaison role for him in other legal matters (unrelated to the Florida Lawsuit). A true and correct copy of my email correspondence with Dr. Wright and his response is attached hereto as Exhibit A.

21. In April 2020, I entered into a second Common Interest Agreement, this time between Dr. Craig Wright, myself, and nChain Group Holdings Limited (now the current holding company for the nChain Group of companies)("2020 Common Interest Agreement"). The 2020 Common Interest Agreement is also made expressly with respect to the Florida Lawsuit. It does not replace the 2018 Common Interest Agreement; it supplements it to add myself to the agreement. As described above, nChain and Dr. Wright have a common interest in protecting nChain's patent portfolio and other intellectual property. I have a common interest with nChain and Dr. Wright in the same subject matter because I continue to act as Dr. Wright's liaison with his litigation counsel. We entered into the 2020 Common Interest Agreement in order to protect

DECLARATION OF JIMMY NGUYEN IN RESPONSE
TO PLAINTIFFS' SECOND MOTION TO COMPEL
(USDC CASE NO. 2:20-cv-00593-BJR)
Page 7 of 9

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

the ability of nChain, Dr. Wright, and myself (and our lawyers) to confer and share information amongst each other related to the Florida Lawsuit.

22. The 2020 Common Interest Agreement memorializes the unwritten understanding between nChain, Dr. Wright, and myself that was in place since the inception of the Florida Lawsuit.

## KNOWLEDGE RELATED TO FLORIDA LAWSUIT

23. I first met Dr. Wright in September 2016, three years after David Kleiman passed away and many years after Bitcoin emerged to the world in 2008 and 2009. Before the Florida Lawsuit was filed, I had only limited knowledge about Mr. Kleiman or Dr. Wright's relationship with Mr. Kleiman – based generally upon information I had read online and only a few conversations with Dr. Wright in which Mr. Kleiman was briefly mentioned. At my deposition in this case on April 30, 2020, I answered questions about the limited information I knew about David Kleiman before the Florida Lawsuit.

24. After the Florida Lawsuit was filed, Dr. Wright and I had communications in which he provided me more information about Mr. Kleiman than he had previously mentioned, as well as information about other topics at issue in the Florida Lawsuit. I understood that Dr. Wright provided me such information only in furtherance of my role as his representative and liaison to his litigation counsel, and to be protected by the 2018 and 2020 Common Interest Agreements described above and related unwritten understandings, and with the understanding that information would be kept confidential. I relied upon the protections of my role as Dr. Wright's representative and liaison to his litigation counsel and the protections of the 2018 and 2020 Common Interest Agreements in receiving and discussing information about the Florida Lawsuit and its subject matter with Dr. Wright and his litigation counsel and nChain representatives.

DECLARATION OF JIMMY NGUYEN IN RESPONSE
TO PLAINTIFFS' SECOND MOTION TO COMPEL
(USDC CASE NO. 2:20-cv-00593-BJR)
Page 8 of 9

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

DATED this 6th day of May 2020.

_____
Jimmy Nguyen

DECLARATION OF JIMMY NGUYEN IN RESPONSE
TO PLAINTIFFS' SECOND MOTION TO COMPEL
(USDC CASE NO. 2:20-cv-00593-BJR)
Page 9 of 9

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on May 6, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to those registered with CM/ECF.

Further, I hereby certify that on May 6, 2020, I provided the foregoing to following non-CM/ECF participants via Electronic Mail/Email:

*Counsel for Plaintiffs:*

Emanuel Jacobowitz, WSBA #39991
CLOUTIER ARNOLD JACOBOWITZ, PLLC
2701 1st Ave., Ste. #200
Seattle, WA 98121
Telephone: 206-769-3759
Email: manny@CAJlawyers.com

Kyle W. Roche and Joseph M. Delich
ROCHE CYRULNIK FREEDMAN LLP
99 Park Avenue, Suite 1910
New York, NY 10016
Email: kyle@rcfllp.com; and
jdelich@rcfllp.com

Velvel (Devin) Freedman, FL Bar No. 99762
ROCHE CYRULNIK FREEDMAN LLP
200 S. Biscayne Blvd, Suite 5500
Miami, FL 33131
Telephone: (305) 357-3861
Email: vel@rcfllp.com; and
nbermond@rcfllp.com

Andrew S. Brenner
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Email: abrenner@bsfllp.com

*Counsel for Defendant:*
Amanda McGovern
Email: amcgovern@riveromestre.com

DATED this 6th day of May, 2020.

/s/ Scott B. Henrie, WSBA #12673
Scott B. Henrie, WSBA #12673
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Telephone: (206) 628-6600   Fax: (206) 628-6611
Email: shenrie@williamskastner.com

*Attorneys for James "Jimmy" D. Nguyen, Subpoenaed Individual*

(USDC Case No. 20-cv-00593-BJR)