UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-80176-CV-Bloom/Reinhart

IRA KLEIMAN, and
W&K INFO RESEARCH, LLC,

        Plaintiffs,

v.

CRAIG WRIGHT,

        Defendant.
_____/

## ORDER ON DISCOVERY

This matter is before the Court for resolution of several discovery disputes relating to the application of Florida's attorney-client and marital privileges. I begin by discussing the applicable legal principles, then turn to the specific discovery disputes.

## LEGAL PRINCIPLES

In this diversity case, I apply the attorney-client and spousal privileges as they exist under Florida law. Fed. R. Evid. 502. Both of these privileges are codified in Florida statutes. Dr. Wright bears the burden of establishing that an applicable privilege exists. *Southern Bell Tel. &. Tel. Co. v. Deason,* 632 So. 2d. 1377, 1383 (Fla. 1994).

> "[T]estimonial exclusionary rules and privileges contravene the fundamental principle that the public ... has a right to every man's evidence," and therefore must be "strictly construed" . . . The burden of demonstrating that a privilege applies to a particular communication, i.e., that the confidentiality of the communication is more important than the public interest in transparency, is on the proponent of the privilege. The proponent must establish the existence of the privilege by a preponderance of the evidence.

*MapleWood Partners, L.P. v. Indian Harbor Ins. Co.,* 295 F.R.D. 550, 583-84 (S.D. Fla. 2013) (J. Hoeveler) (citations omitted) (bracket in original) (applying Fed. R. Evid. 104(a) and 502 to Florida privilege). A privilege can be waived by voluntary disclosure. Fla. Stat. 90.507.[1]

The attorney-client privilege is found in Florida Statute 90.502, which states in relevant part:

> (2) A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.
>
> (3) The privilege may be claimed by:
>
>> (a) The client.
>> (b) A guardian or conservator of the client.
>> (c) The personal representative of a deceased client.
>> (d) A successor, assignee, trustee in dissolution, or any similar representative of an organization, corporation, or association or other entity, either public or private, whether or not in existence.
>> (e) The lawyer, but only on behalf of the client. The lawyer's authority to claim the privilege is presumed in the absence of contrary evidence.

Fla. Stat. 90.502.

> A corporation can hold an attorney-client privilege.
>
> Unlike a claim of attorney-client privilege made by an individual, a claim of privilege raised by a corporation is subject to a "heightened level of scrutiny." To establish that communications are protected by the attorney-client privilege, Defendants must demonstrate that the documents satisfy the following requirements:
>
> (1) the communication would not have been made but for the contemplation of legal service;

---

[1] A person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if the person, or the person's predecessor while holder of the privilege, voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication. This section is not applicable when the disclosure is itself a privileged communication. Fla. Stat. § 90.507.

(2) the employee making the communication did so at the direction of his or her corporate superior;

(3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;

(4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;

(5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Milinazzo v. State Farm Ins. Co.,* 247 F.R.D. 691, 697 (S.D. Fla. 2007) (citing *Southern Bell,* 632 So. 2d at 1383) (J. Torres).

The spousal privilege is found in Florida Statute 90.504, and states:

(1) A spouse has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, communications which were intended to be made in confidence between the spouses while they were husband and wife.

Fla. Stat. § 90.504. "For the privilege to apply, spouses must have a 'reasonable expectation of privacy' in the communication in question." *Lamport v. Williams,* No. 14-CV-14126-DMM, 2014 WL 12605141 at *3 (S.D. Fla. June 3, 2014) (citing *Boyd v. State,* 17 So. 3d 812, 817 (Fla. Dist. Ct. App. 2009)). "Marital communications are presumed confidential absent evidence to the contrary. Factors, such as the nature of the message and circumstances under which it is delivered, may rebut that presumption." *Yokie v. State,* 773 So. 2d 115, 117 (Fla. Dist. Ct. App. 2000) (citing *Hanger Orthopedic Group, Inc. v. McMurray,* 181 F.R.D. 525, 530 (M.D. Fla. 1998)).

## BACKGROUND

On March 19, 2019, I ordered Dr. Wright to produce a list of his bitcoin holdings. DE 124 at 18-23. He asserted that it was impossible for him to comply because the information

necessary to generate that list was held by a blind trust that he could not access. DE 156. I ordered him to identify the trust. DE 166. He submitted sworn declarations identifying two trusts — Tulip Trust I and Tulip Trust II. DE 223, DE 404-2. He subsequently testified that the information necessary to generate the bitcoin list might come to him by bonded courier in or about January 2020. Judge Bloom gave him a chance to produce the information.

> In light of the Defendant's representations that the bonded courier is scheduled to arrive in January 2020, the Court will permit the Defendant **through and including February 3, 2020**, to file a notice with the Court indicating whether or not this mysterious figure has appeared from the shadows and whether the Defendant now has access to the last key slice needed to unlock the encrypted file. In the event this occurs, and further if the Defendant produces his list of Bitcoin Holdings as ordered by the Magistrate Judge, then this Court will not impose any additional sanctions . . .

DE 373 at 22.

On or about January 6, 2020, Dr. Wright produced in discovery the deed for a third trust ("Tulip Trust III"). DE 369. Thereafter, he provided a bitcoin list to Plaintiffs and filed a Notice of Compliance. DE 376.

Plaintiffs requested, and Judge Bloom authorized, a limited number of depositions directed at how Dr. Wright obtained the necessary information to generate the bitcoin list. DE 382. Dr. Wright responded on January 28, 2020. *See* DE 404-1. He objected to Interrogatories 2, 3, and 5. As to Interrogatory 2, he objected based on relevance, attorney-client privilege, and spousal privilege. As to Interrogatory 3, he objected on the same grounds, as well as over-breadth, undue burden, disproportionality, and cumulativeness. His response to Interrogatory 5 incorporated his response and objections to Interrogatory 2.

On February 25, 2020, I conducted a discovery hearing and overruled the relevance objections. The parties appear to have resolved their dispute over the scope of Interrogatory 3; it is now limited to events in or about December 2019 related to Dr. Wright's acquisition of

4

information from Denis Mayaka. On March 5, 2020, I conducted a discovery hearing to address the remaining privilege objections.

## DISCUSSION

*Interrogatory Responses*

Interrogatory 2 asks Dr. Wright to provide a "detailed description" of how he obtained the necessary information. He responded that his wife, who is the trustee of the Tulip Trust III, received the trust agreement in December 2019 from counsel for the Trust. Thereafter, she received an encrypted trust file. She then provided him with a file containing the bitcoin list.

Dr. Wright asserts that the communications between his wife and the counsel for the Trust are protected by the attorney-client privilege. He further asserts that the communications between him and his wife are protected by the spousal privilege.

At the hearing on March 5, Dr. Wright's counsel represented that Denis Mayaka (who is identified in the response to Interrogatory 1) is the counsel to the Trustee referenced in the Response to Interrogatory 2. To establish an attorney-client relationship between Mr. Mayaka and Ms. Watts, Dr. Wright introduced a sworn, un-notarized, Declaration of Denis Bosire Mayaka. *See* Hearing Exhibit 1. The Declaration states, "I am lawyer [*sic*] and obtained my bachelor of law degree in 2007 from Moi University in Kenya." Dr. Wright also introduced a printout of a LinkedIn profile that reflects Mr. Mayaka having a Bachelor of Laws degree from Moi University. *See* Hearing Exhibit 2.[2] Dr. Wright also relies on his sworn responses to the Interrogatories, which assert that Mr. Mayaka is counsel to the Trust.

Dr. Wright's counsel also argued that he has an independent attorney-client relationship with Mr. Mayaka apart from the Tulip Trust III. As evidence of this relationship, they point to

---

[2] Plaintiffs objected to the admission of both exhibits because they were hearsay.

the Mayaka Declaration, which states, "I have represented Dr. Craig Steven Wright since 2012 on, among others, investment matters. Specifically, I represent Dr. Wright and Wright International Investments Ltd in connection with the Tulip Trust documents, including the Tulip Trust dated July 7, 2017."

The record does not establish that an attorney-client relationship exists between Mr. Mayaka and Ms. Watts. First, as finder of fact, I disregard the Mayaka Declaration because it has not been adequately authenticated. Particularly given my prior finding that Dr. Wright has produced forged documents in this litigation, I decline to rely on this kind of document, which could easily have been generated by anyone with word processing software and a pen. Second, I accept counsel's representation that Dr. Wright intended for his sworn interrogatory answers to affirm that Mr. Mayaka was the counsel to the Trustee of Tulip Trust III. Nevertheless, I give no weight to sworn statements of Dr. Wright that advance his interests but that have not been challenged by cross-examination and for which I cannot make a credibility determination. I have previously found that Dr. Wright gave perjured testimony in my presence. Third, the Trust document does not identify Mr. Mayaka as counsel; he is assigned a different role. *See generally* DE 404-3. In sum, the record does not establish that Mr. Mayaka is counsel to the Trustee of the Tulip Trust. For similar reasons, the record does not establish that Dr. Wright and Mr. Mayaka have an independent attorney-client relationship.

Even assuming there was an attorney-client relationship between Mr. Mayaka and Ms. Watts as Trustee, the record does not establish that any communications between them in December 2019 were intended to remain confidential. Rather, it appears that the encrypted file that was sent on or about December 17 was intended to be decrypted and disclosed to Plaintiffs. Likewise, give this Court's prior orders, it must have been understood that the Tulip Trust III

document was to be produced to Plaintiffs. These facts create a strong inference that any communications surrounding the transfer of these materials to Ms. Watts were not intended to remain confidential. Additionally, by disclosing to Dr. Wright any otherwise-confidential communications with counsel, Ms. Watts has waived the privilege for those communications. Finally, Dr. Wright lacks legal authority to assert an attorney-client privilege over communications between the trustee and counsel for the trust. He would not be the client; the trustee would be.

Turning to the marital privilege claims, there is a presumption that communications between Ms. Watts and Dr. Wright were intended to be confidential. Relying on *Hanger Orthopedic,* Plaintiffs argue that there is a blanket exception to the spousal privilege for business-related communications. That conclusion is not correct. Courts have looked to the business purpose of a communication as evidence that it was not intended to remain confidential, but the business purpose is not necessarily dispositive. *See Hanger Orthopedic,* 181 F.R.D. at 530 ("The fact that the communication relates to business *may* demonstrate the intent that a communication was not intended to be confidential.") (emphasis added). *Hanger Orthopedic* cites and discusses a leading hornbook which states:

> *The fact that the communication relates to business transactions may show that it was not intended as confidential. Examples are statements about business agreements between spouses, or about business matters transacted by one spouse as agent for the other, or about property or conveyances.* Usually, such statements relate to facts which are intended later to become publicly known. To cloak them with privilege when the transactions come into litigation would be productive of special inconvenience and injustice.

*Id.* (Emphasis in original) (citing McCormick on Evidence, § 80 (4th ed. 1992). Here, the totality of the circumstances indicates that any communications between Dr. Wright and Ms. Watts relating to the encrypted file and the Tulip Trust III document were not intended to be

7

confidential. As noted above, the spouses understood that these documents were going to be transmitted to Plaintiffs. The documents related to interests in property which will eventually become publicly known.

*Corporate Attorney-Client Privilege*

In response to multiple requests for production, Dr. Wright provided a privilege log that asserts attorney-client privilege over approximately 11,000 documents on behalf of 17 corporations, all of which are either dissolved or in liquidation.[3] The record does not establish Dr. Wright's current connection to the companies, if any. Nevertheless, Dr. Wright admits that he currently has actual possession of documents that would be responsive to Plaintiffs' discovery requests, but that he asserts would be protected by the corporations' attorney-client privilege.

Dr. Wright asserts (and the record does not contradict) that he lacks the authority to affirmatively waive the attorney-client privilege on behalf of a third-party corporation. Plaintiffs argue that (1) a dissolved corporation cannot assert an attorney-client privilege as a matter of Florida law, (2) even if an attorney-client privilege survives corporate dissolution, Dr. Wright has no authority to invoke it for these corporations, and (3) even if Dr. Wright has the authority to invoke the attorney-client privilege, he has not met his burden of showing that these specific communications are privileged. DE 389. Dr. Wright responds that (1) the corporate attorney-client privilege survives dissolution, (2) the attorney-client privilege need not be affirmatively asserted — once created, it exists until it is waived, (3) if an affirmative privilege assertion is

---

[3] Plaintiff's Memorandum Challenging [Dr. Wright's] Privilege Designations identifies 17 companies that Plaintiffs speculate are the underlying entities for which the attorney-client privilege is being invoked. DE 389 at 5-6. Dr. Wright's Response did not challenge Plaintiffs' assertion that these were the underlying corporate entities, nor did it supplement the list. *See* DE 394. I therefore deem the parties to have stipulated to the information contained in the chart on page 6 of DE 389.

required, Dr. Wright can assert it, under Florida law, (4) it would violate Australian law to compel disclosure of these privileged communications, and (5) if Dr. Wright cannot invoke the attorney-client privilege, it would be unduly burdensome to require him to notify the person who unquestionably could invoke it. DE 394.[4]

I find that the attorney-client privilege, like all discovery objections and privileges, must be affirmatively asserted. The Federal Rules of Civil Procedure permit a party to request discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Because the requesting party may not know whether its request encompasses privileged material, the default condition is that the responding party will produce what is requested. If a responding party objects to the discovery request, it must assert an objection, state all legal bases for that objection, and specify that it is withholding material based on that objection. Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."); S.D. Fla. Local Rule 26.1(e)(2)(A) ("Where an objection is made to any interrogatory or subpart thereof or to any production request under Federal Rule of Civil Procedure 34, the objection shall state with specificity all grounds."). "Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived." S.D. Fla. L. R. 26.1(e)(2)(A).[5] When the legal objection is that the request calls for

---

[4] The parties agreed that a ruling on the categorical objections would resolve the vast majority of the privilege claims. I therefore do not address whether each of the approximately 11,000 items is, in fact, a confidential attorney-client communication.

[5] Local Rule 26.1(e)(2)(A) disposes of Dr. Wright's argument that a privilege continues to exist until it is waived. If the privilege is not timely asserted, it is waived as a matter of law.

9

privileged material, the objecting party also must provide a privilege log which contains sufficient information for the requesting party to challenge the privilege claim. S.D. Fla. L. R. 26.1(e)(2)(B). These procedures are designed to provide an orderly process for the parties to identify, and the Court to resolve, claims of privilege. Fundamental to this process is that an objecting party must affirmatively assert its objection, which then permits the requesting party to bring the legal issue before the Court.

I further find that, even assuming the attorney-client privilege survives corporate dissolution under Florida law, Dr. Wright lacks authority to assert the attorney-client privilege on behalf of these unidentified third-party companies. Under Section 90.502, the attorney-client privilege can be claimed only by a limited group of people. Dr. Wright argues that he falls within the category of "successor, assignee, trustee in dissolution, or any similar representative of an organization, corporation, or association or other entity, either public or private, whether or not in existence." Fla. Stat. 90.502(3)(d). Specifically, he asserts that he is a "similar representative" to a successor, assignee, or trustee in dissolution. There is no evidence in the record to support this assertion. At most, he appears to be a person who was formerly associated with these entities in some capacity, and who retains actual possession of documents that belonged to the entities.

At the March 5 hearing, Dr. Wright argued for the first time that the assertedly-privileged documents were not in his care, custody, or control in his individual capacity, but rather in his capacity as agent/representative/bailee of the entities. Dr. Wright argues that because the Court and Plaintiffs previously treated him as being responsible for producing documents belonging to these entities, he should be permitted to invoke the attorney-client privilege on behalf of those

entities. *See* DE 394 at 7 n.3.⁶ The Federal Rules of Civil Procedure require a party to produce materials that are within the party's "possession, custody, or control." Fed. R. Civ. P. 34(a). There is a body of caselaw that addresses when documents are in a party's possession, custody, or control. *See, e.g., Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir. 1984) ("Under Fed. R. Civ. P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand."); *Batista v. Nissan North America, Inc.,* 2015 WL 10550409 at *2 (S.D. Fla., Dec. 7, 2015) (J. Scola); *Costa v. Kerzner Intern. Resorts, Inc.,* 277 F.R.D. 468, 471 (S.D. Fla. 2011) (J. Seltzer). By listing these materials in the privilege log and otherwise not raising a timely objection, Dr. Wright has waived the argument that these documents are not in his possession, custody, or control.

Dr. Wright argues that requiring him to produce the assertedly-privileged documents would require him to violate Australian law. In support of this argument, he submitted a Declaration from Australian lawyer Gordon Thomas Grieve. DE 394-1. Mr. Grieve states, "Under Australian law, documents covered by the attorney client privilege are privileged from the moment of the communication. There is no need to 'assert' or 'claim' the privilege when the document is created and such documents remain privileged until privilege is waived by the holder of the privilege." DE 394-1 at ¶10. He further states, "A corporation's privilege is not extinguished by its dissolution, and upon dissolution, the right to waive a corporation's privilege

---

⁶ Although Dr. Wright has not cited to the portion of the record where he asserts that I ordered production of corporate documents, it is my consistent practice to not define what is within a party's "possession, custody, or control" unless that party raises a specific objection on these grounds. My recollection is that here I followed that practice, that is, I ordered Dr. Wright to produce whatever was in his possession, custody, or control without specifically ruling what documents fell into that category.

passes on to the Australian Securities and Investment Commission ('ASIC')." *Id.* at ¶13. ASIC's policy is to neither assert nor waive privilege on behalf of a dissolved corporation, but ASIC does not object to a party obtaining a court order adjudicating whether the attorney-client privilege applies and whether "the party in possession produce the documents." *Id.* at ¶15 citing *Kellert v. Foate* [2015] NSWSC 954 (Austl.).[7]

Mr. Grieve's Declaration does not demonstrate that ordering production of these materials would violate Australian law. Nothing in Mr. Grieve's Declaration establishes that Australian law is inconsistent with U.S. law. Under both countries' laws, the attorney-client privilege is created at the time of the confidential attorney-client communication; it continues to exist until waived. The issue before me is whether a party waives the attorney-client privilege by failing to timely and affirmatively assert it in response to a discovery request. The answer is "yes." Dr. Wright is not waiving the privilege; he has no legal authority to do so. The corporate entities are waiving the privilege by not seeking to intervene to assert it. Because Australian law recognizes that a waiver terminates the privilege, compelling production here would not violate Australian law.[8]

Finally, Dr. Wright asserts that it would be unduly burdensome to require him to notify all of the persons who could properly assert the privilege on behalf of these entities. He does not

---

[7] Plaintiffs object to me considering Mr. Grieve's Declaration because they claim it was submitted in violation of Fed. R. Civ. P. 44.1, which states in pertinent part, "A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." The Declaration was appended to a pleading filed on February 11, 2020. Plaintiffs were on notice three weeks before the March 5 hearing, which was adequate time to procure their own evidence on Australian law. Because I find proper notice and no prejudice, I reject Plaintiffs' objection.

[8] Even if an order compelling production would require Dr. Wright to violate Australian law, he has not shown that this fact should affect my decision on the merits.

cite any legal authority that this notification is required, nor has he introduced any evidence of who would have to be notified and why it would be unduly burdensome to do so. At the March 5 hearing, counsel asserted that, because ASIC will neither assert nor waive the privilege, Dr. Wright must notify each of the lawyers for the corporations to see if they want to assert the privilege under Section 90.502(2)(e).

Dr. Wright's protestations of undue burden ring hollow. At the March 5 hearing, Plaintiffs introduced an email from Ms. Watts to Stefan Matthews dated July 27, 2015, which purports to be a draft summary of 14 corporate entities which overlap with the entities that are the basis for Dr. Wright's privilege claims. *Compare* Hearing Exhibit 3 with DE 389 at 6. This exhibit shows that either Dr. Wright or Ms. Watts was a Director of every company, often the sole Director(s). Therefore, if lawyers exist who could invoke the attorney-client privilege for these entities, Dr. Wright and Ms. Watts have direct personal knowledge of who they are. Also, it appears that the assets of many of these entities were transferred into trust by Dr. Wright and Ms. Watts in 2017 and that most of the companies were dissolved thereafter. These facts (and the lack of any evidence to contradict them) lead to the conclusion that these companies were effectively the alter egos of Dr. Wright and Ms. Watts, and that there would not be any undue burden in notifying the lawyers involved, if in fact any exist.

Any contractual or other legal obligation that Dr. Wright may have to notify the entities is not a basis for limiting discovery under Rule 26(b)(1) or for a protective order under Rule 26(c), here. The entities allowed Dr. Wright to retain these materials. Dr. Wright currently has actual possession of the documents. He already has located, reviewed, and logged these materials. All that remains is to physically produce them. He has not shown that doing so would create an undue burden.

## CONCLUSION

For the foregoing reasons, I overrule Dr. Wright's objections to Interrogatories 2, 3, and 5. He shall provide amended verified answers to these interrogatories **on or before March 12, 2020 at 5:00 p.m. Eastern time (U.S.).** I also overrule Dr. Wright's assertion of attorney-client privilege on behalf of third-party corporations. These documents shall be produced o**n or before March 12, 2020, at 5:00 p.m. Eastern time (U.S.).**

**DONE and ORDERED** in Chambers this 9th day of March, 2020, at West Palm Beach in the Southern District of Florida.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE