**IN THE HIGH COURT OF JUSTICE**  CLAIM NO. QB-2019-001430

**QUEEN'S BENCH DIVISION**

**MEDIA AND COMMUNICATIONS LIST**

B E T W E E N:

**CRAIG WRIGHT**

**Claimant**

- and -

**PETER MCCORMACK**

**Defendant**

---

**REPLY TO DEFENCE**

---

1. Save as specifically admitted below the Claimant joins issue with the Defendant on its Defence.

2. References in this Reply to paragraph numbers are to the Defence unless otherwise stated.

**Parties**

3. In respect of Paragraph 2:

    3.1. As to paragraph 2.1 it is denied that the Claimant claimed in 2015 to have a PhD in computer science from Charles Sturt University, Australia. He had submitted his thesis at this time for his Doctorate in philosophy of computer science, which was conferred on 7 April 2017.

1

19. Paragraph 22.5 is admitted save that paragraph 15.2 above is repeated *mutatis mutandis*.

20. Paragraph 22.6 is admitted save that it is denied that the SN Paper was published on 31 October 2008. A draft of the SN Paper was uploaded on 31 October 2008 and distributed publicly. The final version was only published this year. In respect of the genesis of the SN Paper:

    20.1. In 2004, the Claimant began working at accountancy and business company BDO Kendalls (a member of the BDO Global partnership) in Sydney, Australia. Whilst there, he worked on various projects, including distributed systems and peer-to-peer networks. Around this time the Claimant worked on a project in his spare time that would eventually become bitcoin.

    20.2. In working on this project, the Claimant wished to be able to create value on a platform which is otherwise free. He wished to move the internet away from an insecure non-commercial model to a secure commercial model. The Claimant believed, and still believes, that this is impossible to achieve without a method of allowing micropayments to occur at a granular level, as small as 1/1000 of a cent.

    20.3. The term 'bitcoin' was not coined until 2008. It was chosen as a name because each one is a coin in bit format. Prior to this, it had been characterised by the Claimant as another micropayment system adjunct to the internet. It differed from well-known payment systems such as Paypal or Visa as it offered micropayments at a much more granular level. The Claimant considered various possible names for this micropayment system before he settled on 'bitcoin'; early candidates included "Time Coin", "Byte Coin" and "Byte Cash".

    20.4. In 2008 the Claimant had been completing his masters in law ("LLM") at the University of Northumbria at Newcastle, alongside his masters in statistics, for which he was studying at the University of Newcastle, Australia. His LLM thesis was

submitted in February 2008 and concerned internet intermediaries, reflecting the Claimant's original vision for bitcoin. The Claimant included passages from his LLM thesis proposal (which he submitted in November 2007) in the Bitcoin White Paper. The Claimant was awarded his LLM in May 2008.

20.5. On 31 October 2008, the Claimant, as Satoshi Nakamoto, announced the payment project on the forums, cryptographic lists, a community money group and peer-to-peer forums. This led to Hal Finney and a number of other third parties offering the Claimant assistance. At this point the code was still in development.

20.6. In March 2008 the Claimant requested input from David Kleiman into a paper relating to the project. In May 2008, the Claimant released the first version of the White Paper, edited by Mr Kleiman, under the name Satoshi Nakamoto.

20.7. The Claimant chose the name Satoshi Nakamoto as he worried about the success of the White Paper if released in his own name: in the past he had received abuse from critics for highlighting the dangers of the free internet. He had used the pseudonym since mid-2008 as he has a long-held interest in and affinity with Japanese history and culture. The name 'Satoshi Nakamoto' is a combination of two Japanese names which are significant or otherwise have meaning to the Claimant: 'Satoshi' signifies wise or intelligent history – a concept which fits in with the Claimant's vision for the blockchain as an immutable public ledger; it is also the Japanese name for the protagonist in Pokémon as well as the name of the Claimant's favourite character from Ron Chernow's history of the J.P. Morgan banking dynasty *"The House of Morgan: An American Banking Dynasty and the Rise of Modern Finance"*; 'Nakamoto' is a homage to the 18th century Japanese philosopher Tominaga Nakamoto.

21. As to paragraph 22.7:

21.1. It is denied that the Genesis Block was mined. It was created by the Claimant on 3 January 2009 without being mined.

21.2. It is denied that the first version of bitcoin software was released on 8 January 2009. The first version of the bitcoin software was released in November 2008. At this time, David Kleiman, Ray Dillinger and Hal Finney reviewed the code of this software. It was then updated and re-released in December 2008 and again in January 2009. The bitcoin executable file and associated code were released on 9 January 2009. The first block was mined on 9 January 2009. Between 3 and 9 January 2009, the bitcoin code crashed repeatedly, and the Claimant spent that time identifying and correcting these issues; that is the reason why there were six days between the date that the Claimant created the Genesis block and the date that the first bitcoin was mined.

21.3. Save the above, paragraph 22.7 is admitted.

22. Paragraph 22.8 is admitted. From mid-2010 onwards the Claimant began to retire the Satoshi Nakamoto pseudonym. The Claimant's last communication as Satoshi Nakamoto was an email to Mike Hearn on 23 April 2011. The Claimant completed the New South Wales Bar course in or around June 2013. In January 2013, the Claimant enrolled in the Practical Legal Training Program Course at The College of Law in New South Wales. Australia and then completed his solicitor training at the College of Law in Australia. Following this the Claimant began teaching as an academic lawyer at Charles Stuart University. Until this point he did not describe himself as a lawyer, in the sense of being an individual with a formal legal qualification. The Claimant does not have a licence to practise law in any jurisdiction, although he is an Ordinary Member of The Society of Legal Scholars, which he joined in January 2019.

23. Paragraph 22.9 is denied. This is a mischaracterisation of the nature of bitcoin. It is not possible to identify the address as suggested in the Defence: at this time there were no addresses as now understood, and as would later be introduced into the blockchain; instead, transactions were conducted via Paid Public Keys.

24. As to paragraph 22.10:

12

**Statement of Truth**

The Claimant believes that the facts set out in this Reply to Defence are true.

Signed: *[signature]*

Name: DR CRAIG WRIGHT

Date: 11 October 2019

Served on    11th   day of October    2019 by SCA Ontier LLP (solicitors for the Claimant)

28