CLAIM NO: QB-2019-001430

**IN THE HIGH COURT OF JUSTICE**
**QUEEN'S BENCH DIVISION**
**MEDIA AND COMMUNICATIONS LIST**
BETWEEN:

CRAIG WRIGHT

Claimant

and

PETER MCCORMACK

Defendant

---

**AMENDED PARTICULARS OF CLAIM**

---

**Parties and background**

1. The Claimant is a computer scientist and businessman based in England and Wales. He is highly active within the cryptocurrency sphere, running a number of cryptocurrency and blockchain businesses.

2. The Defendant is a podcaster and a blogger who specialises in publishing content about news and other developments in bitcoin and associated cryptocurrencies. He regularly publishes podcasts and blogs about cryptocurrency on his website, "What Bitcoin Did" (accessible here: https://www.whatbitcoindid.com/).

3. The Defendant has a public account on the social media platform Twitter. His account, @PeterMcCormack (accessible here: https://Twitter.com/PeterMcCormack) was set up in August 2017. The Defendant is an extremely active user of Twitter, having posted around 12,500 tweets on the platform. The Defendant uses his Twitter account to tweet

25.9.2.8. The Twenty-fifth Asia-Pacific Conference on Communications, held in Ho Chi Minh City, Vietnam on 6 to 8 November 2019;

25.9.2.9. CHAINSIGHTS Fintech and Blockchain Summit, held in New York City, USA on 10 October 2019; and

25.9.2.10. MoneyConf, held in Lisbon, Portugal on 5 to 7 November 2019.

25.9.3. Given the timings of these exclusions it is to be inferred that the primary cause of these exclusions was publication of the words complained of.

25.9.4. As a result of the exclusion of the Claimant from the conferences set out at paragraphs 25.9.2.1 to 25.9.2.8 the academic papers which the Claimant had been due to present were not presented at those conferences and, as a result, the Claimant has been unable to publish them to the world at large. The inability of the Claimant to present and publish those papers has led to considerable difficulties for the Claimant in pursuing academic opportunities. The Claimant wishes to develop an academic career in England (having previously taught as an Adjunct Lecturer in the Faculty of Business, School of Computing and Mathematics at Charles Sturt University, Australia) but needs to demonstrate the recent publication of academic papers to obtain such positions.

25.9.5. Further, the inability of the Claimant to publish academic papers has a detrimental impact upon the value of the patents which the Claimant files and creates. The publication of academic papers assists in the promotion of patents: a patent which has a published academic paper behind it can be worth many times as much as a patent which does not.

25.10. The publication of the words complained of has made it more difficult for the Claimant to achieve his ambition of becoming a magistrate in Surrey. Any application he made for such a position would be severely compromised by the existence in the public domain of the words complained of, given that they allege

<u>serious dishonesty on the part of the Claimant. Shortly after the Defendant started publishing the words complained of, the Claimant therefore abandoned the application he had started making for the position of magistrate, assuming (reasonably) that the application was now hopeless.</u>

26. In addition to the serious harm caused to his reputation by the publication and republication of the publications complained of, the Claimant has suffered considerable distress and embarrassment. In support of his claims for general and/or aggravated damages for libel, the Claimant will rely upon the following facts and matters:

   26.1. Paragraphs <u>25.1 to 25.10</u> are repeated.

   26.2. <u>The publication of the words complained of has had an impact on the Claimant's relationship with his family. The Claimant no longer picks his children up from school, and is rarely seen in public with his children, because of the vilification he believes the words complained of will subject him to amongst other parents.</u>

   26.3. The publications complained of at paragraphs 4, 6, 8, 10, 12, 14, 16, 19, <u>24A, 24C, 24E, 24G, 24I and 24K above</u> have made by the Defendant as part of a campaign to undermine and invalidate the Claimant's attempts to vindicate his reputation in the courts of England and Wales via legal proceedings.

   26.4. <u>As the Defendant explained during the Hotep Jesus discussion (at 3hr:01m) his objectives in publishing the First to Tenth publications complained of included:</u>

      26.4.1. <u>To *"divert attention away"* from 'Hodlonaut', the Norwegian blogger Magnus Granath whom the Claimant has threatened to sue for libel; and to do so by *"taking down"* (i.e. destroying) the Claimant. The Defendant further explained that the means by which he would *'take down'* the Claimant were by labelling him a liar and a fraud on his Twitter feed, which he believed he could do because of his *"platform and audience"*, i.e. by virtue of the power and influence of the Defendant's Twitter feed.</u>

(3) An order under Section 12 of the Defamation Act 2013 that the Defendant publishes a summary of the judgment in the proceedings.

**ADAM WOLANSKI QC**

**ALED JONES**

**Served**

**Reserved etc**

**ADAM WOLANSKI QC**

**ALED JONES**

**STATEMENT OF TRUTH**

I believe that the facts stated in these Particulars of Claim are true.

Full name:    Craig Steven Wright

Signed:    *[signature]*

Served this 19th day of December 2019 by SCA ONTIER LLP, Halton House, 20-23 Holborn, London EC1N 2JD, Solicitors for the Claimant.